No. 24-672

IN THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

RENEE LYNN GRISMORE, an individual,

Plaintiff – Appellant,

v.

MERCEDES-BENZ USA, LLC, a Delaware Limited Liability Company,
Defendant – Appellee.

Appeal from the United States District Court for the Central District of California
in Case Number 5:21-cv-01914-JWH-SHK Hon. John W. Holcomb, District Judge

APPELLEE'S ANSWERING BRIEF

Richard L. Stuhlbarg
richard.stuhlbarg@bowmanandbrooke.com
BOWMAN AND BROOKE LLP
970 West 190th Street
Suite 700
Torrance, CA 90502
Telephone:   +1.310.768.3068

Amanda E. Heitz
amanda.heitz@bowmanandbrooke.com
Alexander J. Egbert
alex.egbert@bowmandbrooke.com
BOWMAN AND BROOKE LLP
2929 N. Central Ave.
Suite 1900
Phoenix, AZ 85012
Telephone: 1.602.643.2311

Soheyl Tahsildoost
service@thetafirm.com
Theta Law Firm, LLP
12100 Wilshire Boulevard
Los Angeles, CA 90025
Suite 1070
Telephone: 424-297-3103

Attorneys for Respondents
Mercedes-Benz USA, LLC

---

## DISCLOSURE STATEMENT

---

Respondent Mercedes-Benz USA, LLC (MBUSA) is wholly owned by Daimler North America Corporation (DNAC). DNAC is wholly owned by Daimler International Nederland B.V. (DINBV). DINBV is wholly owned by Daimler AG, a publicly held German Aktiengesellschaft.

## TABLE OF CONTENTS

DISCLOSURE STATEMENT ----------------------------------------------------------- i

TABLE OF CONTENTS----------------------------------------------------------- ii

TABLE OF AUTHORITIES ----------------------------------------------------------iv

STATEMENT OF JURISDICTION--------------------------------------------------1

ISSUES PRESENTED FOR REVIEW----------------------------------------------1

STATEMENT OF THE CASE--------------------------------------------------------2

SUMMARY OF THE ARGUMENT------------------------------------------------4

ARGUMENT ----------------------------------------------------------------------------7

I.    The district court properly dismissed Grismore's express warranty claim because a used vehicle leased without a manufacturer's full warranty is not a "new motor vehicle" under the Act. ----------------------------------7

        A.    Under the statutory text's plain language, a "new motor vehicle" must be a legally new vehicle, whose warranties are necessarily always new (i.e., full). -----------------------------------------8

        B.    The Act's legislative history confirms the Legislature intended "new motor vehicle" to exclude used vehicles sold without full manufacturer warranties. ----------------------------------------- 23

        C.    Most—and better reasoned—cases agree. ------------------------- 36

II.    The Court should uphold the trial court's dismissal of Grismore's implied warranty claim.------------------------------------------------------- 44

        A.    Grismore waived her argument on appeal. ------------------------- 45

      B.      In any case, Grismore's used car is not a new consumer good to which the Act's implied warranties apply. ------------------------- 46

CONCLUSION ----------------------------------------------------------------- 48

CERTIFICATE OF COMPLIANCE ---------------------------------------------- 50

CERTIFICATE OF SERVICE ------------------------------------------------- 51

---

## TABLE OF AUTHORITIES

---

*Page(s)*

**Cases**

*Pineda v. Nissan N. Am.,* Inc., No. CV 22-239-DMG (JCX),,
  2022 WL 2920416 (C.D. Cal. July 25, 2022) ........................................ 36

*Adams v. BMW N. Am.,,*
  *LLC,* No. 22-CV-AS-KSC, 2024 WL 1898459 (S.D. Cal. Apr. 30, 2024) ........... 36

*Alaska Airlines, Inc. v. United Airlines, Inc.,*
  948 F.2d 536 (9th Cir. 1991) ...................................................... 44

*Alves v. Mercedes-Benz USA, LLC,*
  No. CV233049MWFRAOX, 2023 WL 5207492 (C.D. Cal. July 10, 2023) ......... 36

*Arnett v. Dal Cielo,*
  *14 Cal. 4th 4 (1996)* .............................................................. 10

*Arzeta v. McLaren Auto., Inc.,*
  No. 221CV02787FLAPDX, 2023 WL 8351538 (C.D. Cal. Oct. 12, 2023) .......... 36

*Brown v. Arizona,*
  82 F.4th 863 (9th Cir. 2023) ...................................................... 46

*Coelho v. Hyundai Motor Am.,*
  No. 22-CV-07670-BLF, 2023 WL 3763812 (N.D. Cal. May 31, 2023) ............... 36

*Cooper v. Simpson Strong-Tie Co.,*
  *460 F. Supp. 3d 894 (N.D. Cal. 2020)* ........................................... 46

*Crawley v. Alameda Cnty. Waste Mgmt. Auth.,*
  243 Cal. App. 4th 396 (2015) ..................................................... 11

*Cummins, Inc. v. Superior Ct.,*
  36 Cal. 4th 478 (2005) ............................................................ 31

*Dagher v. Ford Motor Co.,*
  238 Cal. App. 4th 905 (2015) .................................................. 24, 25

*Edwards v. Mercedes-Benz USA, LLC,*
  No. CV 21-2671-RSWL-JCX, 2022 WL 5176869 (C.D. Cal. Oct. 5, 2022) ......... 36

*Fish v. Tesla, Inc.,*
  No. SACV21060PSGJDEX, 2022 WL 1552137 (C.D. Cal. May 12, 2022) ......... 36

*Gavaldon v. DaimlerChrysler Corp.,*
  32 Cal. 4th 1246 (2004) ........................................................... 23

*Gustafson v. Alloyd Co.,*
  513 U.S. 561 (1995) ............................................................... 11

iv

*Helvering v. Morgan's, Inc.*,
   293 U.S. 121 (1934) ........................................................... 10

*Hendrix v. Superior Court*,
   191 Cal.App.4th 889 (2011) ............................................... 22

*Hernandez v. Mercedes-Benz USA, LLC*,
   No. 322CV00824BENRBB, 2023 WL 2593935 (S.D. Cal. Mar. 20, 2023) .......... 36

*In re W. States Wholesale Nat. Gas Antitrust Litig.*,
   715 F.3d 716 (9th Cir. 2013) ............................................. 7

*Int'l Fed'n of Pro. & Tech. Engineers, Loc. 21, AFL-CIO v. Superior Ct.*,
   42 Cal. 4th 319 (2007) .................................................... 12

*Ixchel Pharma, LLC v. Biogen, Inc.*,
   9 Cal. 5th 1130 (2020) .................................................... 37

*Jensen v. BMW of N. Am., Inc.*,
   35 Cal. App. 4th 112, 41 Cal. Rptr. 2d 295 (1995) ...................... passim

*Johnson v. Nissan N. Am., Inc.*,
   272 F. Supp. 3d 1168 (N.D. Cal. 2017) .................................... 35

*Killgore v. SpecPro Pro. Servs., LLC*,
   51 F.4th 973 (9th Cir. 2022) ............................................. 7

*Kiluk v. Mercedes-Benz USA, LLC*,
   43 Cal. App. 5th 334 (2019) .............................................. 34

*Kleiser v. Chavez*,
   55 F.4th 782 (9th Cir. 2022) ............................................. 44

*Krieger v. Nick Alexander Imports, Inc.*,
   234 Cal. App. 3d 205 (Cal. Ct. App. 1991) ............................... 22, 23

*Kuyawa v. Mercedes-Benz USA, LLC*,
   No. 23-CV-05712-WHO, 2024 WL 950164 (N.D. Cal. Mar. 5, 2024) ........... 36

*Larkin v. Workers' Comp. Appeals Bd.*,
   62 Cal. 4th 152 (2015) .................................................... 8

*Lawrence v. Walzer & Gabrielson*,
   207 Cal. App. 3d 1501 (Cal. Ct. App. 1989) ............................. 11

*Lemke-Vega v. Mercedes-Benz USA, LLC*,
   No. 23-CV-01408-DMR, 2023 WL 5957175 (N.D. Cal. Sept. 12, 2023) ....... 36

*Loomis v. Cornish*,
   836 F.3d 991 (9th Cir. 2016) ............................................. 44

*Martinez v. Regents of Univ. of California*,
   50 Cal. 4th 1277 (2010) .................................................. 30

*Molina v. Ford Motor Co.*,
   No. 2:23-CV-06323-RGK-KS, 2023 WL 7314127 (C.D. Cal. Sept. 19, 2023) .... 36

*Nilsen v. Tesla, Inc.*,
   No. 22-CV-07472-BLF, 2023 WL 3763811 (N.D. Cal. May 31, 2023) ......... 36

*Nunez v. FCA US LLC,*
   61 Cal. App. 5th 385 (2021)................................................................. 43
*Ogden Martin Sys. v. San Bernadino County,*
   932 F.2d 1284 (9th Cir. 1991)............................................................... 7
*Olson v. Morris,*
   188 F.3d 1083 (9th Cir. 1999)............................................................. 46
*Palonen v. Mercedes-Benz USA, LLC,*
   No. CV 23-23-DMG (RAOX), 2023 WL 8254503 (C.D. Cal. Sept. 28, 2023)..... 36
*Park City Servs., Inc. v. Ford Motor Co.,*
   144 Cal. App. 4th 295 (2006)............................................................. 25
*People v. Gonzalez,*
   2 Cal. 5th 1138 (2017)......................................................................... 8
*Prescription Opioid Cases,*
   57 Cal. App. 5th 1039 (2020)............................................................... 9
*Prop. Rsrv., Inc. v. Superior Ct.,*
   1 Cal. 5th 151 (2016)......................................................................... 10
*Pryor v. Lee C. Moore Corp.,*
   262 F.2d 673 (10th Cir. 1958)............................................................. 34
*Raines v. U.S. Healthworks Med. Grp.,*
   15 Cal. 5th 268 (2023)......................................................................... 9
*Robinson v. Gutierrez,*
   98 Cal. App. 5th 278 (2023)................................................................. 9
*Rodriguez v. FCA US,*
   512 P.3d 654 (Cal. 2022) .................................................................. 40
*Rodriguez v. FCA US, LLC,*
   77 Cal. App. 5th 209 (2022)....................................................... 5, 21, 35
*Rosenthal v. Landau,*
   90 Cal. App. 2d 310 (1949)............................................................ 9, 10
*Ruvalcaba v. Hyundai Motor Am.,*
   No. 822CV01244JWHJDE, 2024 WL 943946 (C.D. Cal. Jan. 4, 2024)............... 36
*Stiles v. Kia Motors Am., Inc.,*
   101 Cal. App. 5th 913 (2024)................................................... 40, 41, 42
*Velador v. Mercedes-Benz USA, LLC,*
   No. 223CV07439CASSSCX, 2024 WL 312676 (C.D. Cal. Jan. 22, 2024)........... 36

*Statutes*

Cal. Civ. Code § 1790 ............................................................................ 3
Cal. Civ. Code § 1792.5 .................................................................... 6, 45
Cal. Civ. Code § 1793.22 ............................................................... passim
Cal. Veh. Code § 331 ......................................................................... 13

Cal. Veh. Code § 426 ........................................................................... 17

Cal. Veh. Code § 430 ..................................................................... passim

Cal. Health & Safety Code § 43204 ................................................... 20

Cal. Veh. Code § 11713 ..................................................................... 18

Cal. Veh. Code § 11713.1 .................................................................. 18

Cal. Veh. Code § 11713.16 ................................................................ 18

Cal. Veh. Code § 11713.21 ................................................................ 18

Cal. Veh. Code § 11713.26 ................................................... 18, 33, 34

Cal. Veh. Code § 11950 ..................................................................... 18

Cal. Veh. Code § 24007 ............................................................. 18, 33

Cal. Veh. Code § 28052 ......................................................... 6, 15, 16

Cal. Veh. Code § 415 ........................................................................ 26

Cal. Veh. Code § 665 ................................................................. 18, 28

Cal. Veh. Code §11713.18 ................................................................. 18

Cal. Veh. Code, § 11704.5 ................................................................ 18

_____

## STATEMENT OF JURISDICTION
_____

a.      MBUSA agrees with Grismore's statement of the district court's subject

matter jurisdiction.

b.      MBUSA agrees with Grismore's statement of this Court's jurisdiction.

c.      MBUSA agrees with Grismore's statement of the timeliness of the

appeal.

_____

## ISSUES PRESENTED FOR REVIEW
_____

(1)      Did the district court properly enter summary judgment dismissing

Grismore's claim for Song–Beverly remedies applicable only to "new motor

vehicles," which Grismore argued should apply to her used car because its original

manufacturer warranty had not expired?

(2)      Should this Court uphold the district court's dismissal of Grismore's

implied warranty claim where Grismore's argument:

(a) was never made to the district court; and even if it were

(b) seeks to apply remedies applicable only to new consumer goods to

her used car?

1

## STATEMENT OF THE CASE

This case arises from Plaintiff–Appellant Renee Lynn Grismore's lease of a pre-owned Mercedes-Benz GLA250W (the "Subject Vehicle") from non-party Mercedes-Benz of Ontario (the "Dealership") in January 2021. ER-472. Defendant–Appellee Mercedes-Benz USA, LLC ("MBUSA") distributed the Subject Vehicle when it was new. ER-477.

Before Grismore leased the Subject Vehicle, the Dealership owned it and had registered it as a "Dealer Service Vehicle" and/or "Dealer Loaner Vehicle." ER-184–85; SER-49.  No private consumer had owned or leased it before Grismore. ER-472.

Grismore's signed lease agreement with the Dealership states: "If the vehicle is pre-owned, it is not covered by a warranty unless indicated by a check in the corresponding box below." ER-478; SER-12, 14. The referenced "box[es] below"—none of which are checked—state: (1) "Remainder of a standard new vehicle warranty from manufacturer; (2) Pre-owned vehicle warranty from manufacturer; or (3) Pre-owned warranty from third-party provider." ER-478; SER-14. Finally, the lease agreement included the following disclaimer:

> We lease the vehicle to you "AS IS". EXCEPT AS EXPRESSLY PROVIDED UNDER THIS LEASE, AND UNLESS PROHIBITED BY LAW, WE MAKE NO WARRANTIES OR REPRESENTATIONS, EITHER EXPRESS OR IMPLIED, AS TO THE VEHICLE'S (OR ANY PART OR ACCESSORY THEREOF) CONDITION, MERCHANTABILITY, OR FITNESS FOR ANY

2

PARTICULAR PURPOSE; AND WE MAKE NO OTHER REPRESENTATION OR WARRANTY WHATSOEVER.

SER-15.

MBUSA was not a party to Grismore's lease. ER-477. MBUSA did not issue any warranty with the lease. ER-472 The Subject Vehicle retained only the balance/remainder of the existing warranties that originally accompanied the Subject Vehicle when it was new. ER-67.

In July 2021, Grismore brought the Subject Vehicle to the Dealership to address mechanical issues. ER-472. In October 2021, Grismore returned the Subject Vehicle to the Dealership with the same complaints, but the Dealership's technician concluded that the Subject Vehicle was operating as designed. ER-472.

Dissatisfied, Grismore sued MBUSA in the United States District Court for the Central District of California in November 2021. ER-472. She brought two claims under the Song–Beverly Consumer Warranty Act, Cal. Civ. Code § 1790 et seq.,(the "Act")[1] against MBUSA as a "'manufacturer' and/or 'distributor'": (1) breach of express warranty, and (2) breach of implied warranty. ER-472. MBUSA moved for summary judgment on both. ER-46–48. The court issued an order and separate judgment granting MBUSA's motion and dismissing the action on January 8, 2024. ER-470–488.

---

[1] Hereafter, unless otherwise specified all statutory references are to the California Civil Code.

3

—————————————————————

## SUMMARY OF THE ARGUMENT

—————————————————————

Grismore seeks remedies under the Act applicable only to "new motor vehicles." Under § 1793.22(e)(2): "'New motor vehicle' means a new motor vehicle that is bought or used primarily for personal, family, or household purposes." Interpreted in context, and consistent with the drafters' express intent, this means a "new motor vehicle" is a motor vehicle that has not been previously sold at retail or registered. Because it is undisputed that the Subject Vehicle was registered before Grismore's lease, this means it is not a "new motor vehicle," and the district court properly dismissed Grismore's express warranty claims on summary judgment.

Grismore's argument to the contrary relies on misguided dicta from a 30-year-old case, *Jensen v. BMW of N. Am., Inc.*, 35 Cal. App. 4th 112, 41 Cal. Rptr. 2d 295 (1995), as modified on denial of reh'g (June 22, 1995) [hereinafter *Jensen*]. That dicta is incorrect. *Jensen* ignores what § 1793.22(e)(2) says "new motor vehicle" "means" and relies instead on broad extrapolation from what § 1793.22(e)(2) says "new motor vehicle" "includes." In other words, it disregards the statutory definition of the term in favor of an expansive reading of examples provided in the statute.

The clause on which Grismore's arguments depend states that a "'[n]ew motor vehicle' includes . . . a dealer-owned vehicle and a 'demonstrator' or other motor vehicle sold with a manufacturer's new car warranty." The parties agree this means

4

that "new motor vehicle" includes "other vehicles" that are like demonstrators and other dealer-owned vehicles if they are "sold with a manufacturer's new car warranty." The parties disagree, however, on what "sold with a manufacturer's new car warranty" means.

In 2022, the California Court of Appeal in *Rodriguez v. FCA US, LLC*, 77 Cal. App. 5th 209 (2022) [hereafter *Rodriguez*] answered this question. It concluded that the Legislature could only have intended "sold with a manufacturer's new car warranty" to mean "sold with a manufacturer's new (i.e., full) warranty." And more than a dozen federal district court decisions have followed *Rodriguez*. *Rodriguez* is correct for several reasons.

First, § 1793.22(e)(2)'s text precludes the conclusion that every vehicle owned by a dealer and resold to a consumer qualifies as a "new" vehicle so long as the manufacturer's warranty is not expired. This statute defines "new motor vehicle" as a legally new car—i.e., one that has not previously been registered or sold at retail. And it specifies that "new motor vehicle" "includes" dealer-owned demonstrators or other vehicles "sold with a manufacturer's new car warranty." Because every warranty sold with a new car is necessarily a new (i.e., full) warranty, the Legislature could not have intended the phrase "sold with a manufacturer's new car warranty" to mean "sold with [either] a manufacturer's [(a) transferred and unexpired, or (b) original] new car warranty," as Grismore argues.

5

Second, the Legislature's choice to use "manufacturer's *new car* warranty" instead of the more general "manufacturer's warranty" shows that the Legislature intended the catchall to exclude used cars with transferred warranties. If the Legislature had meant to include any new or used vehicle sold with either a new or transferred manufacturer's warranty, it would have just written the more general "manufacturer's warranty" into the statute. Unless "new" means full, the word is mere surplusage. And if the Legislature had meant to include used vehicles sold with miles already accrued towards the warranty limit, it presumably would not have used the phrase, "new car warranty."  "New car warranty" is synonymous with "new motor vehicle warranty," which, under Cal. Veh. Code § 28052, is a full warranty a manufacturer makes on a "new motor vehicle."

Third, the Act's legislative history also reinforces this reading. It reflects that, with the single express exception for used assistive devices like wheelchairs, the Legislature has always intended that the Act apply against manufacturers only as it relates to new consumer goods.

Finally, the Court should affirm the dismissal of Grismore's implied warranty claims under the Act as well for three reasons. First, she waived the argument she makes on appeal by not making it in the trial court. Second, her lease included an "as is" clause by which she waived all implied warranties. *See* § 1792.5. Third, under the statutes Grismore invokes on appeal, the implied warranties apply only to new

6

consumer goods. Because there is no dispute that her car is used, and therefore, a used consumer good. Her claim fails on this basis as well.

---

## ARGUMENT

---

The Court "review[s] de novo [a] district court's grant of summary judgment based on [the district court's] interpretation of state law." *Ogden Martin Sys. v. San Bernadino County*, 932 F.2d 1284, 1287 (9th Cir. 1991).

The Court should affirm: **(1)** the district court properly dismissed Grismore's express warranty claim because the Act applies only to a "new motor vehicle"—not a used one that happens to have a balance left on the manufacturer's original warranty; and **(2)** the district court properly dismissed Grismore's implied warranty claim because a vehicle leased "as is" and "used" is not covered by implied warranties under the Act

### I. The district court properly dismissed Grismore's express warranty claim because a used vehicle leased without a manufacturer's full warranty is not a "new motor vehicle" under the Act.

Because the Act is a California statute, California rules of statutory construction govern its interpretation. *See In re W. States Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d 716, 746 (9th Cir. 2013), *aff'd sub nom. Oneok, Inc. v. Learjet, Inc.*, 575 U.S. 373 (2015) ("In interpreting a state statute, a federal court applies the relevant state's rules of statutory construction.").

7

When interpreting a statute under California rules of statutory construction, the "fundamental task . . . is to determine the Legislature's intent so as to effectuate the law's purpose." *Killgore v. SpecPro Pro. Servs., LLC*, 51 F.4th 973, 983 (9th Cir. 2022) (quoting *People v. Gonzalez*, 2 Cal. 5th 1138, 1141 (2017)). To determine the Legislature's intent, courts begin with the statute's text because "statutory language typically is the best and most reliable indicator of the Legislature's intended purpose." *Larkin v. Workers' Comp. Appeals Bd.*, 62 Cal. 4th 152, 157 (2015). Only "[i]f the statutory language in question remains ambiguous after [a court] consider[s] its text and the statute's structure . . . may [the court] look to various extrinsic sources, such as legislative history, to assist [it] in gleaning the Legislature's intended purpose." *Id.* at 158

Applied here, there is only one reasonable interpretation of "new motor vehicle" under § 1793.22(e)(2): a new vehicle sold with a new (i.e., full) manufacturer warranty. That is because **(a)** under the text's plain language, a "new motor vehicle" must be a legally new vehicle, whose warranties are necessarily always new (i.e., full); **(b)** the Act's legislative history confirms the Legislature intended "new motor vehicle" to exclude used vehicles sold without full manufacturer warranties; and **(c)** most, and better reasoned, cases agree.

## A. Under the statutory text's plain language, a "new motor vehicle" must be a legally new vehicle, whose warranties are necessarily always new (i.e., full).

The plain meaning of an operative statutory phrase, like "new motor vehicle,"

8

is not determined in isolation; courts "consider portions of a statute in the context of the entire statute and the statutory scheme of which it is a part, giving significance to every word, phrase, sentence, and part of an act in pursuance of the legislative purpose." *See Raines v. U.S. Healthworks Med. Grp.*, 15 Cal. 5th 268, 279 (2023); *see also Robinson v. Gutierrez*, 98 Cal. App. 5th 278, 284 (2023) ("We begin with the text, construing words in their broader statutory context and, where possible, harmonizing provisions concerning the same subject.").

Here, the language of the Act, as a whole, demands that "new motor vehicle" be interpreted to exclude used vehicles, even when there is an unexpired manufacturer warranty, because: **(1)** § 1793.22(e)(2) defines a "new motor vehicle" as a legally new vehicle, and legally new vehicle's warranties are always full; and **(2)** this is the only interpretation consistent with the rest of Act.

> ### 1. Section 1793.22(e)(2) defines a "new motor vehicle" as a legally new vehicle—and legally new vehicle's warranties are always full.

Several principles of statutory construction are relevant to determining the plain meaning of "new motor vehicle" under § 1793.22(e)(2). First, California courts "give the words of the statute 'a plain and commonsense meaning' unless the statute specifically defines the words to give them a special meaning." *Prescription Opioid Cases*, 57 Cal. App. 5th 1039, 1046 (2020) (internal quotation marks omitted). Even then, "an entirely artificial definition is rare, the meaning of the definition is almost

always closely related to the ordinary meaning of the word being defined." Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 226 (2012); *cf.* Rosenthal v. Landau, 90 Cal. App. 2d 310, 316 (1949) ("Words do not acquire a peculiar and different meaning because used in a statute.").

Second, where a statute specifically defines a word or phrase by saying it "'means' something, the clear import is that this is its *only* meaning." Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 226 (2012). In contrast, where "a definitional section says that a word 'includes' certain things, that is usually taken to mean that it may include other things as well." *Id.*; *see also* Helvering v. Morgan's, Inc., 293 U.S. 121, 126, n. 1 (1934) ("The natural distinction would be that where 'means' is employed, the term and its definition are to be interchangeable equivalents, and that the verb 'includes' imports a general class, some of whose particular instances are those specified in the definition.").

Third, "[i]t is to be presumed, in the absence of anything in the context to the contrary, that the words were used in the ordinary acceptation *and as defined by the statutes in force at the time*." Prop. Rsrv., Inc. v. Superior Ct., 1 Cal. 5th 151, 214–15 (2016) (Liu, J., concurring) (emphasis added) (internal quotation marks omitted). Although the presumption is the strongest (indeed, is a legal mandate) where the definitional section expressly states the definition applies to the statutory provision at issue, the presumption nonetheless applies where no such intent is

expressed, even across statutory codes. *See, e.g.,* *Arnett v. Dal Cielo*, 14 Cal. 4th 4, 19–24 (1996) (interpreting the word "discovery" as used in Evidence Code section 1157 in the more limited sense used in various statutes across various California codes instead of the broader everyday meaning of the term used in lay speech).

This presumption is strengthened where a statutory definition appears overtly circular (that is, the term is used in its own definition). For example, in *Gustafson v. Alloyd Co.*, 513 U.S. 561, 575–76 (1995), the Supreme Court examined the meaning of "prospectus" for purposes of the Securities Act of 1933, which defined the term circularly: "The term 'prospectus' means any prospectus . . . ." Instead, of ascribing illogic to Congress, The Court explained that the apparent circularity showed Congress's intent to adopt the accepted legal definition of the term:

> When the 1933 Act was drawn and adopted, the term "prospectus" was well understood to refer to a document soliciting the public to acquire securities from the issuer. *See* Black's Law Dictionary 959 (2d ed. 1910) (defining "prospectus" . . .). In this respect, the word "prospectus" is a term of art, which accounts for congressional confidence in employing what might otherwise be regarded as a partial circularity in the formal, statutory definition.

*Id.*

This presumption is even stronger when the statutory definition reflects the term's ordinary meaning. *See, e.g.,* *Crawley v. Alameda Cnty. Waste Mgmt. Auth.*, 243 Cal. App. 4th 396, 410 (2015) (applying constitutional provision's definition of "refuse" to interpret meaning of "refuse collection services" left undefined in another

11

constitutional provision, where the definition aligned with refuse's ordinary meaning identified in Merriam-Webster's online dictionary).

Fourth, "[u]nder the doctrine of *ejusdem generis* . . . where general words follow the enumeration of particular classes of persons or things, the general words are construed as applicable only to persons or things of the same general nature or class as those enumerated." *Lawrence v. Walzer & Gabrielson*, 207 Cal. App. 3d 1501, 1502 (Cal. Ct. App. 1989). To that effect, "[t]he words 'other' or 'any other' following an enumeration of particular classes should be read therefore as 'other such like' and to include only others of like kind or character." *Id.* Put another way, where a catchall follows a list of specifics, the catchall's scope is limited to the specifics' common characteristics. *See Int'l Fed'n of Pro. & Tech. Engineers, Loc. 21, AFL-CIO v. Superior Ct.*, 42 Cal. 4th 319, 342 (2007).

Turning now to the statutory text here, § 1793.22(e)(2) of the Act specifically defines "new motor vehicle" as follows:

> *"New motor vehicle" means a new motor vehicle that is bought or used primarily for personal, family, or household purposes.* "New motor vehicle" also means a new motor vehicle with a gross vehicle weight under 10,000 pounds that is bought or used primarily for business purposes by a person, . . . or any other legal entity, to which not more than five motor vehicles are registered in this state. *"New motor vehicle" includes* the chassis, chassis cab, and that portion of a motor home devoted to its propulsion, . . . [and] *a dealer-owned vehicle and a "demonstrator" or other motor vehicle sold with a manufacturer's new car warranty* . . . . A demonstrator is a vehicle assigned by a dealer for the

>purpose of demonstrating qualities and characteristics
>common to vehicles of the same or similar model and type.

(Emphasis added). The provision's first and third sentences are most relevant to the Subject Vehicle.

The first sentence circularly defines "new motor vehicle": "'New motor vehicle' means a new motor vehicle . . . ." *Id*. The circularity shows the Legislature's intent to rely on the well-understood legal meaning of the term. That meaning is found in the California Vehicle Code—where "new motor vehicle" is used interchangeably with "new vehicle,"[2] and where that term is defined as a vehicle made of new parts that has neither been sold at retail nor registered with a government authority. Cal. Veh. Code § 430; *cf.* Cal. Veh. Code § 426 (defining "new motor vehicle dealers" as franchised dealers that sell "new and unregistered motor vehicles"). This specific legal meaning aligns with the ordinary meaning of *new motor vehicle*. *See Motor Vehicle*, Merriam-Webster (online ed., last visited June 15, 2024) ("an automotive vehicle not operated on rails," synonymous with "car"); *New*, Merriam-Webster (online ed., last visited June 15, 2024) ("being other than the former or old," as in: "He bought a *new* car").

Thus, given the definiteness of "means" in "'New motor vehicle' means . . .," §

---

[2] *See, e.g.,* Cal. Veh. Code § 331(a)(2) ("The franchisee is granted the right to offer for sale or lease . . . new motor vehicles . . . ."); Cal. Veh. Code § 331(a)(3) ("The operation of a portion of the franchisee's business is substantially reliant on the franchisor for a continued supply of *new vehicles* . . . ." (Emphasis added)).

13

1793.22(e)(2)'s first sentence establishes—independent of examples provided in the subsequent "including" clause—that to qualify as a "new motor vehicle" under the Act, a vehicle must be "new." That is, it cannot have been either sold at retail or registered with a government authority. Here, it is undisputed that prior to Grismore's lease, the Subject Vehicle had been registered with a government authority. Thus, the Subject Vehicle could not have been a "new motor vehicle" for purposes of the Act.

Grismore ignores § 1793.22(e)(2)'s first sentence establishing what a "'[n]ew motor vehicle' means . . . ." when she interprets "new motor vehicle." *See* OB at 21–24. Her interpretation focuses singly the third sentence's "including" clause: "'New motor vehicle' includes . . . a dealer-owned vehicle and a 'demonstrator,' or other vehicle sold with a manufacturer's new car warranty . . . ." *See id.* She claims that the catchall "other vehicle sold with a manufacturer's new car warranty" means any vehicle—new or used—sold with a balance remaining on the manufacturer's original warranty. OB at 12.

Unmoored from the crucial first sentence, it is unsurprising Grismore misreads the third. She argues that the third sentence's two specific examples—"a dealer-owned vehicle" and "a 'demonstrator'"—are both "used" vehicles (in the sense that they have been driven) and neither are sold with a full manufacturer's warranty. Thus, she concludes that the catchall provision means other vehicles that have been used and are sold with less than a full manufacturer's warranty. OB at 21–24.

14

Grismore is mistaken. First, she assumes with no support that demonstrators and dealer-owned vehicles are necessarily "used" vehicles. On the contrary, dealer-owned vehicles generally remain "new" until sold at retail, unless statutorily defined exceptions apply (for example, an exception for dealer-owned service vehicles under § 11715(d), means those vehicles must be registered and, thereby, become legally "used"). *See* Cal. Veh. Code §§ 430, 665; § 11715(d). And demonstrators are legally "new" unless they are "regularly used or operated." *See* Cal. Veh. Code §§ 430, 665. Exceptions do not define the scope of a catchall under the doctrine of *ejusdem generis*, and they do not justify ignoring the plain meaning of "new motor vehicle" as new vehicles.

Second, Grismore is wrong that demonstrators and other dealer-owned vehicles are typically sold with less-than-full manufacturer's warranties. *See* OB at 13, 23. She cites no authority supporting her claim. There is none. By law, whenever a demonstrator or other dealer-owned vehicle is sold in a condition satisfying the general meaning of a "new motor vehicle" under § 1793.22(e)(2)—i.e., whenever such vehicle has neither been sold at retail nor registered—the only warranty a manufacturer can make for that vehicle *is* a full warranty. *See* Cal. Veh. Code § 28052 (requiring every new motor vehicle warranty based on a vehicle's mileage to begin *after* "the motor vehicle has first been sold as new to the purchaser"); *see also* § 1793.01 (requiring that warranties on consumer goods made

after July 1, 2023 begin no earlier than the date of the good's delivery); Billings, Handling Automobile Warranty and Repossession Cases (2d ed. 2003) § 6:13 (describing the industry practice in which "[f]or a small fee, manufacturers will reinstate the original warranty period when the dealer sells the demonstrator").

This means, under the principle of *ejusdem generis*, that the catchall "other vehicle sold with a manufacturer's new car warranty" is limited in scope to vehicles, like legally new demonstrator and other dealer-owned vehicles, that when sold with a warranty are always sold with a new, i.e., full, warranty. Thus, when the Legislature inserts the phrase "manufacturer's new car warranty" into § 1793.22(e)(2), it could have only meant a manufacturer's new, full, warranty.

And that is not the only textual evidence that "manufacturer's new car warranty" is necessarily a full warranty. The Legislature's very choice to use "manufacturer's *new car* warranty" instead of the more general "manufacturer's warranty" is itself probative that the Legislature intended the catchall to exclude used cars' transferred warranties. If the Legislature had meant to include any new or used vehicle sold with either a new or transferred manufacturer's warranty, it could have just written the more general "manufacturer's warranty." And if the Legislature had meant to include used vehicles sold with miles already accrued towards the warranty limit, it presumably would not have used a phrase, "new car warranty." "New car warranty" is synonymous with "new motor vehicle warranty," which, under Cal. Veh.

Code § 28052, is a full warranty a manufacturer makes on a "new motor vehicle." Reading "new car warranty" to mean the rest of an unexpired vehicle warranty renders the word "new" surplusage.

In sum, the plain meaning of § 1793.22(e)(2)'s first sentence "means" that to qualify as a "new motor vehicle" a vehicle must be a legally new vehicle, which has never been sold at retail or registered—the kind of vehicle that will be sold with a manufacturer's new, full warranty. The plain meaning of § 1793.22(e)(2)'s third sentence confirms that the only vehicles the Legislature had in mind were those sold with full warranties. Thus, because it is undisputed that the Subject Vehicle was legally used and sold without a full warranty, the Subject Vehicle does not qualify as a "new motor vehicle."

> ### 2. "New motor vehicles" cannot include used vehicles without making § 1793.22(e)(2) inconsistent with the rest of the Act and related statutes.

The way California law differentiates between "new" and "used" vehicles—both generally and in the Act in particular—further confirms that Grismore's request to treat a used vehicle like a new one is unsupportable. Her reading is inconsistent with the Act and other statutes relating to vehicle sales.

> #### a. The Legislature distinguishes between new and used vehicles—and consistently treats them differently.

Time after time, the California Legislature has shown its intent to treat "new" and "used" motor vehicles differently. The Vehicle Code, for example, limits *who*

17

can sell a vehicle based on whether it is new or used. Franchised new car dealers, used car dealers unaffiliated with any manufacturer, and even private parties can all sell used vehicles. But only manufacturers and their franchised dealers are allowed to sell "new" ones. Cal. Veh. Code §§ 426, 11713.1(f)(1).

The law also creates specific obligations of a seller based on its classification. New car dealers receive their new vehicle inventory from distributors and manufacturers. (Billings, Floor Planning, Retail Financing & Leasing in the Automobile Industry (2004) § 1:4 (Billings, Floor Planning).) Once they do, some are sold directly to consumers while dealers use others of these new vehicles as demonstrators, service loaners, and executive or driver education vehicles. *Id.*, §§ 1:7, 1:14. Similarly, manufacturers and distributors may choose not to sell some new vehicles to dealers and instead use them with their own sales and distribution activities. *See* Cal. Veh. Code § 665. There are separate regulations governing how these dealer- and manufacturer-owned vehicles are registered, taxed, and used. *Id.*.[3] If a new car dealer later chooses to sell a vehicle to the public that it had used as a

---

[3] § 11715(a) (registration requirements); Cal. Code Regs. tit. 13, § 201.00 (use of special plates); Cal. Dept. of Tax and Fee Admin. (CDTFA), Business Taxes Law Guide–Revision 2023, Sales and Use Tax Annotations, § 215.0000 et seq. <https://tinyurl.com/ms8ff9d7> [as of Aug. 10, 2023] (hereafter CDTFA Guide) [discussing use tax regulations]; CDTFA, Motor Vehicle Dealers (Jan. 2023) pp. 26–30 <https://tinyurl.com/2p8sjkfa> [as of Aug. 10, 2023] (hereafter CDTFA, Motor Vehicle Dealers) [same]; Ebin, *Demonstrator FAQs* (Aug. 31, 2020) <https://tinyurl.com/mr46pmdm> [as of Aug. 10, 2023] [the "special DMV forms . . . for demos" include REG 397 (Application for Registration of New Vehicle) and 496 (Used Vehicle Certification)].)

18

demonstrator or for other purposes, it must "conspicuously" disclose its use to the first consumer purchaser. Cal. Veh. Code, § 11713(t).

In contrast, there are different rules governing the sale of used vehicles. Private sales are largely unregulated. Used car dealers must satisfy education, inspection, repair, and disclosure requirements, and dealers must obtain and make available vehicle history reports. *See* § 2986.5; Cal. Veh. Code §§ 11704.5, 11713(d), 11713.1(t), 11713.16(a), 11713.18, 11713.21, 11713.26, 11950, 24007(a)(1), (c)(2); *see also* 16 C.F.R. § 455.1 et seq. (the Federal Trade Commission (FTC) Used Car Rule requires dealers to post a Buyers Guide in every used car offered for sale).

The distinction between new and used vehicles continues with regards to the seller's and manufacturer's obligations after the sale too. Under the Act, when a manufacturer sells "consumer goods" like vehicles with an express warranty, it must provide for local authorized repair facilities to perform warranty repairs. § 1793.2(a)(1)(A). And, under the Act, a manufacturer who is unable to conform a product to its warranty is obligated to replace it or reimburse the buyer. *Id.*

When it comes to "used goods," the requirements are different. *See* § 1795.5. Other than used assistive devices like wheelchairs and hearing aids, manufacturers do not have duties to maintain repair facilities or to buyback unrepaired products. § 1791 (a). Instead, the law places obligations on the distributor or retail seller. § 1795.5(a) (requiring distributor or retail seller who makes express warranties to maintain

19

service facilities and carry out terms of express warranties). And manufacturers are affirmatively *not* responsible for repairing, replacing, or repurchasing used goods. § 1795.5(b); § 1793.5.

The Act treats new and used goods differently with respect to implied warranties too. When new products are sold, their implied warranties are limited in duration to not less than 60 days nor more than one year after the first retail sale. § 1791.1(c). In contrast, the implied warranty for a used product is limited to up to three months. § 1795.5(c).

> ### b. Grismore's efforts to relax the distinction between new and used vehicles are inconsistent with the Act and would ascribe to the Legislature illogical conduct and intentions.

Viewing Grismore's arguments in the context of this statutory environment reveals that they are untenable. Her arguments hinge on her contention that "new motor vehicle" includes used vehicles with time or mileage remaining on their manufacturer warranties. That contention directly conflicts with several other provisions of the Act and related statutes.

First, accepting her interpretation would lead to the bizarre conclusion that the Legislature intended to classify used vehicles with unexpired warranties as both "new motor vehicles" under § 1793.2 and "used" vehicles under § 1795.5. There is nothing in the text of these statutes suggesting that this is what the Legislature intended. And it would defy logic to assume the Legislature went to the work of creating two

20

separate statutory remedies with the unstated intent that a large category of vehicles would qualify under both.

Second, this interpretation is even more unlikely given other statutes expressly accounting for used vehicles sold with portions of unexpired warranties remaining. For example, Cal. Health & Safety Code § 43204(a) requires manufacturers to provide express emissions warranties that extended "to the ultimate purchaser and each subsequent purchaser." Likewise, in enacting statutes governing Motor Vehicle Warranty Adjustment Programs—programs by which manufacturers extend or expand warranty coverage for specific purposes—the Legislature demonstrated its ability to account for used vehicles sold with a portion of a warranty remaining. *See* § 1795.90. For purposes of that statute, the Legislature defined a consumer as a purchaser or "any person to whom the motor vehicle is transferred during the duration of an express warranty." § 1795.90(a). If the Legislature had intended for "new motor vehicle" in the Act to include used vehicles with some portion of a warranty remaining, it could have done the same.

Third, Grismore's interpretation results in strange consequences. Under her interpretation a vehicle could shift from being a "new" motor vehicle subject to a used one before being once again classified as "new." For example, if the first retail purchaser of a new vehicle sold it to another private party, the vehicle would be considered "used," regardless of how much of the warranty remained. *See*

21

§ 1793.22(e)(2); Cal. Veh. Code § 430. And the second buyer would have no recourses under the Act because it does not apply to private sellers. *See* § 1791(1) (limiting definition of seller to commercial sellers). But if the second buyer traded that same vehicle to a dealer during the warranty period, a third buyer could then buy it as a "new" vehicle as long as the warranty was unexpired. *See Rodriguez*, 77 Cal. App. 5th at 221. This bizarre outcome serves no policy purpose and cannot be what the Legislature intended.

Finally, Grismore's interpretation of the statute also interferes with § 1793.22(f)(1). This provision applies whenever a manufacturer buys back a an alleged "lemon" vehicle. Before the manufacturer can resell the vehicle, it must disclose "the nature of the nonconformity experienced by the original buyer or lessee." If, as Grismore's interpretation would mandate, a subsequent buyer could demand a buyback under the Act, then § 1793.22(f)(1) would be null as to the buyback. There would be no requirement of disclosure because the nonconformity was not experienced by the original buyer. This disclosure requirement confirms that manufacturers are expected to repurchase vehicles from only the "original" or "first" buyer. *See Hendrix v. Superior Ct.*, 191 Cal. App. 4th 889, 894 (2011) (interpreting the word "original" in its "usual and ordinary sense" as "preceding all others" and "first.").

Not only is Grismore's interpretation inconsistent with the plain language of

the statute, evaluating it in light of the broader legal context governing motor vehicle sales and other provisions of the Act further demonstrates that it is incorrect. Adopting Grismore's definition of "new motor vehicle" as including used vehicles with less than full warranties remaining would create inconsistencies in the statute and inexplicable, absurd results.

### B. The Act's legislative history confirms the Legislature intended "new motor vehicle" to exclude used vehicles sold without full manufacturer warranties.

The California Legislature enacted the Act in 1970 to supplement protections the California Uniform Commercial code already afforded purchasers of consumer goods—including motor vehicles. *See Krieger v. Nick Alexander Imports, Inc.*, 234 Cal. App. 3d 205, 212 (Cal. Ct. App. 1991). The expressed motivation for its subsequent amendment all attest that the Legislature intended the Act to apply only to *new* goods—including new motor vehicles—the kind advertised and sold with *full* manufacturer warranties.

### 1. The Act's 1971 amendment affirmed the Legislature's intention that the Act apply exclusively to *new* goods—except as otherwise provided in a newly enacted § 1795.5.

After the Act's enactment there was some confusion as to whether it applied only to new goods. As initially worded, the Act's definition of "consumer goods" did not specify whether it applied only to new goods or used ones as well. 1 MJN 119–

20,[4] 168; Stats. 1970, c. 1333, pp. 2480–83. In response to the confusion, the Legislative Counsel of California explained that it had been the Legislature's intention for the Act to apply only to new goods. 1 MJN 168–70. The counsel pointed out that the Legislature implied this intention in other provisions of the Act, for example, in the definition of a "seller" as a person or entity "engaged in the business of selling *new* goods." *Id.*

To make its intention explicit, in 1971, the Legislature amended the definition of "consumer goods," expressly limiting it to "new" goods. *See* 1 MJN 181, 262, Stats. 1971, ch. 1523, § 2, p. 3001; *Gavaldon v. DaimlerChrysler Corp.*, 32 Cal. 4th 1246, 1257 (2004). At the same time, the Legislature enacted a new provision, § 1795.5, to uniquely apply to used goods, still otherwise excluded from the Act. 1 MJN 266, Stats. 1971, ch. 1523, § 17, p. 3008.

### 2. The Act's 1979 amendment shows that if the Legislature wanted provisions outside § 1795.5 to apply to used vehicles, it would have expressly said so.

The Legislature affirmed that it intended the remaining provisions of the Act to exclude used goods generally, when in 1979, the Legislature again amended the definition of "consumer goods," this time to include "new *and used* assistive devices," such as wheelchairs. *See* 8 MJN 8–12, Stats. 1979 ch. 1023 (former § 1791(a)). New assistive devices, of course, had been covered under the general

---

[4] "MJN" refers to Appellee's Motion to Take Judicial Notice. Citations to the exhibits attached to the MJN are cited herein as follows: [Exhibit #] MJN [page #].

definition of "consumer goods"; the Legislature's specific addition of "new and used assistive devices" revealed its understanding that used assistive devices had not been included before.

Similarly, as the California Court of Appeal has pointed out, this amendment shows that the Legislature knows how to apply the rest of the Act outside of § 1795.5 to used goods, like used vehicles, if it wants to. That the Legislature has never added used vehicles as it did "used assistive devices" proves the Legislature does not want to the rest of the Act to apply to used vehicles. *Dagher v. Ford Motor Co.*, 238 Cal. App. 4th 905, 917 (2015).

What is more, the 1979 amendment revealed that the Legislature intended § 1795.5 and the Act's remaining sections to be mutually exclusive. The Legislature added § 1793.02(g, providing: "Section 1795.5 shall not apply to a sale of used assistive devices, and for the purposes of the Song-Beverly Consumer Warranty Act the buyer of a used assistive device shall have the same rights and remedies as the buyer of a new assistive device."  8 MJN 54, Stats. 1979, ch. 1023, p. 3495. This preemptively barred any argument applied to used assistive devices—analogous to the one Grismore is making for used vehicles, here—that the used good can be covered under both § 1795.5 and the other provisions of the Act.

###### 3. The 1982 amendment enacting the "Lemon Law" merely clarified how the Act's repurchase-or-replace provision applies when the consumer good is a motor vehicle.

In 1981, in response to hundreds of letters from consumer who had

experienced problems with defective *new* vehicles, Assemblywoman Sally Tanner introduced a bill containing the substance of what would later become California's "Lemon Law." 5 MJN 1066. Consumers were frustrated over the difficulty in applying to motor vehicles, the "reasonable number of attempts" standard—the standard, under § 1793.2, for the number of repair attempts a consumer must submit any new consumer good before becoming entitled to a refund or replacement. *Id.*

Responding to the frustration, in 1982, the Legislature passed Assemblywoman Tanner's bill "to clarify [the Act's] application to motor vehicles." *See Park City Servs., Inc. v. Ford Motor Co.*, 144 Cal. App. 4th 295, 304 (2006). It created a presumption that if a "new motor vehicle" had been submitted to repair four times or for more than 30 days for the same issue, the consumer would satisfy the "reasonable number of attempts" requirement. 1 MJN 952, Stats.1982, ch. 388, § 1, p. 1723 (former § 1793.2(e)(1)).

Although the bill did not define "new motor vehicle," Assemblywoman Tanner explained it was her assumption that the definitions of the California Vehicle Code would apply. In her official "comment" on the bill, she explained to legislators: "This bill would apply to any 'new motor vehicle – defined in Veh. C. Sec. 415 as any vehicle which is self-propelled – but only if used or bought for use primarily for personal, family, or household purposes." 5 MJN 986. That Assemblywoman Tanner specifically cited Cal. Veh. Code § 415's definition of "motor vehicle," not Cal. Veh.

26

Code § 430's definition of "new vehicle," reveals her understanding that the meaning of the "new" modifier before "motor vehicle" was unambiguous.

Assemblywoman Tanner left little doubt that the hybrid term "new motor vehicle" was meant to incorporate the ordinary meaning of "new vehicle" codified in Cal. Veh. Code § 430 as well. She insisted in no uncertain terms that the "Lemon Law" amendment to the Act "applies only to warranted <u>new</u> (not used) motor vehicles." *See* 14 MJN 1215 (emphasis in original); *see also* 5 MJN 1066 (stating the bill "[p]ertains only to new motor vehicles"); *id.* (explaining the bill's purpose was to solve problems experienced by buyers of "new cars"); 5 MJN 1131–32 (describing the bill, in a letter to Governor Brown asking him to sign it, as a bill to protect "new car purchasers" and "new car buyers," meant to solve their "new car problems").

What is more, the Legislature considered—and chose not to replicate—Connecticut's "Lemon Law," which expressly extended repurchase-or-replace remedies to "any person to whom such motor vehicle is transferred during the duration of an express warranty." 10 MJN 439; 14 MJN 1295. The Connecticut law had just passed that state's General Assembly when the California Assembly Committee on Consumer Protection and Toxic Materials wrote the sponsor of the Connecticut bill requesting a copy. 5 MJN 1051–58. The sponsor obliged, sending a copy to the Committee and the Department of Consumer Affairs, who "worked closely with Assemblywoman Tanner in drafting" California's version that would

27

become the Act. 3 MJN 699; 5 MJN 1051–58; 10 MJN 438–44.

#### 4. The phrase "other motor vehicle sold with a manufacturer's new car warranty" was added to the definition in 1987 to clarify, not expand, its coverage.

In 1985, the California Department of Consumer Affairs studied the "Lemon Law's" impact and effectiveness. 3 MJN 699. The study revealed several latent ambiguities in the text, including in the definition of "new motor vehicle." 3 MJN 699–700. Because of that ambiguity, "[s]ome buyers [were] being denied the remedies under the lemon law because their vehicle [was] a 'demonstrator' or 'dealer-owned' car, even though it was sold with a new car warranty." 3 MJN 700. The Department concluded such exclusions were contrary to the spirit of the law and that it appeared a revision to the definition of "new motor vehicle" was necessary to correct the exclusions. 14 MJN 1295.

The difficulty in applying the meaning of "new motor vehicle" to "demonstrators" and other manufacturer- and dealer-owned vehicles arises from a quirk in the California Vehicle Code's definitions of "new vehicle" and "used vehicle."  As discussed above, a "new vehicle" is as a vehicle constructed of new parts that has neither (1) been sold at retail nor (2) registered with a government authority. Cal. Veh. Code § 430. But a "used vehicle" is slightly broader than just a "new vehicle's" opposite. "Used vehicle" includes all vehicles ever sold at retail or registered with a government authority, *as well as* two kinds of unregistered vehicles that otherwise qualify as "new vehicles": "[1] unregistered vehicles *regularly used or*

28

*operated* as <u>demonstrators</u> in the sales work of a dealer or [2] unregistered vehicles *regularly used or operated* by a manufacturer <u>in the sales or distribution work</u> of such manufacturer." <u>Cal. Veh. Code § 665</u> (emphasis added). These two exceptions make sense. If demonstrators and other dealer-owned vehicles are "regularly used or operated," they might accrue so many miles on their odometers before they are ever sold at retail or registered that they will meet the ordinary meaning of "used vehicle" without meeting the general definition of the term under <u>Cal. Veh. Code § 665.</u> In enacting these two exceptions, the Legislature corrected the anomaly and more closely aligned the ordinary meaning and statutory definition of "used vehicle."

But the solution created another problem: the standard "regularly used or operated" is imprecise and difficult to administer. The Department's study revealed that the "Lemon Law" had made this imprecision relevant to a class of consumers: those who had recently purchased defective demonstrators or other similarly unregistered dealer-owned vehicles and were now trying avail themselves of the "Lemon Law" presumptions whose applicability turned on whether the vehicles were purchased "new."

The Legislature's 1987 amendment to the Act resolved this problem by creating a bright line rule. If a manufacturer permits a demonstrator or similarly unregistered dealer-owned vehicle to be "sold with [the] manufacturer's new car warranty," then that vehicle will be deemed to have not been "regularly used or

29

operated" and, therefore, that vehicle is a "new motor vehicle" covered under the "Lemon Law." This revision was never meant to expand the original intended meaning of "new motor vehicle"—it was only meant to make it more administrable. Indeed, Assemblywoman Tanner called the revised definition "a clean-up measure" merely meant to "clarify vehicles covered." 3 MJN 699; 14 MJN 1251. And the California Public Interest Research Group ("CalPIRG"), who helped Assemblywoman Tanner draft the bill, *see* 3 MJN 548, called the measure a "tune-up" that "does not apply to used cars." 14 MJN 1280–82.

>    **5.  No other amendment or other evidence of the Legislature's intent support of Grismore's strained interpretation of "new motor vehicle."**

Each of Grismore's arguments attributing to the Legislature an intent to apply any provision of the Act outside of § 1795.5 to used goods is baseless.

>    **a.  Grismore has it backwards: if anything, the legislative history of § 1795.8 undermines her interpretation.**

Grismore claims that the legislative history behind § 1795.8's enactment "embraces" *Jensen*'s interpretation of "new motor vehicle." Opening Brief at 52. She cites a background analysis for the bill, copied and pasted into several Senate committee reports, that identifies *Jensen* as "existing case law," "hold[ing]" that a used vehicle sold or leased with an unexpired manufacturer warranty is a "new motor vehicle," and that the Act protects "new and used motor vehicles" covered by manufacturer warranties. *See, e.g.,* 6 MJN 1380.

But this is misleading. Section 1795.8 extends the Act's "new motor vehicle" remedies to new vehicles purchased out-of-state by members of the armed services. In enacting the provision, the Legislature simply intended to extend the "same rights" enjoyed by buyers who purchased vehicles in-state to armed service members who purchased vehicles out-of-state. 6 MJN 1385–86 ("Proponents . . . do not intend to extend any protections beyond those currently provided in California's Lemon Law to members of the Armed Forces.") And besides, "[a committee] report's general summary oversimplify[ing] more nuanced statutory language," is hardly probative of legislative intent. *Martinez v. Regents of Univ. of California*, 50 Cal. 4th 1277, 1293 (2010).

In fact, elsewhere the legislative history shows that the Senate expressly rejected the application of the bill to both "new and used motor vehicles." As initially drafted and introduced to the Senate, the bill included wording like the cited committee reports; it stated the provision would apply to any "new or used motor vehicle." S.B 234, 2007-2008 Sess. (Cal. 2007) (as introduced, Feb. 12, 2007). The Senate Judiciary Committee struck that language. 6 MJN 1387. In its place, it wrote the provision would apply, instead, to "a motor vehicle, as defined in paragraph (2) of subdivision (e) of Section 1793.22." *Id.;* S.B 234, 2007-2008 Sess. (Cal. 2007) (as amended by the Senate, July 27, 2007). That revision reflects the Legislature's rejection—not its "embrace"—of *Jensen*.

31

**b. The literal interpretation of "new motor vehicle" advances the Legislature's intent to balance countervailing interests.**

Grismore claims "*Jensen*'s interpretation is the only construction that fulfills the Act's remedial purpose of protecting vehicle buyers," and that this purpose would be undermined were the Act not applied to used vehicles with a balance left on the manufacturer's warranty. OB at 34–37. She argues "Manufacturers can't have it both ways. They can't choose to make warranties transferable but then strip that warranty of the Act's protections." (OB at 36.)

This is doubly skewed logic. Among other things, it assumes that any limitation on a manufacturer's obligations under the Act negates its remedial purpose. That assumption is false. Just because the Legislature intended the net effect of the Act to be remedial, does not mean any limitation on those remedies—even those manifested in the text of the statute—is somehow contrary to the Legislature's intent or unenforceable. *See Cummins, Inc. v. Superior Ct.*, 36 Cal. 4th 478, 493 (2005) (summarizing the Act's contextual factors supporting the California Supreme Court's ultimate conclusion that "the Legislature contemplated that the Act would apply only if the goods were purchased in California").

All legislation is a balance of competing interests. The Act is no exception. The Legislature's 1982 enactment and 1987 amendment of the "Lemon Law" were the products of compromise with the auto industry. *See, e.g.,* 3 MJN 704–05, Enrolled Bill Report (referencing "amendments which were negotiated with the

automobile manufacturers to remove their opposition (such as an amendment which allows manufacturers to maintain certification if they are in substantial compliance with certification standards)" and expressing "the bill would not have passed without the amendment"); 5 MJN 1124, Enrolled Bill Report (describing how, after a similar predecessor bill failed, the 1982 amendments passed only "after extensive compromise efforts between various consumer and industry groups").

> ### c. California laws independent of the Act already require used-car dealers to inspect vehicles and disclose their defects.

Grismore argues that "*Rodriguez*'s interpretation vitiates the Act's goal of ensuring manufacturers promptly buy back irreparable vehicles and brand them as lemons"—causing an increase in the number of used-cars buyers unsuspectedly buying lemons. OB at 40–44. She claims *Rodriguez's* interpretation will prompt manufacturers to illegally violate their obligation under the Act to buy "lemons" back on the hope that buyers will get frustrated and sell the vehicles, which would legally free the manufacturers from further obligations under the Act. OB at 41.

This argument is absurd. First, it advocates judicial expansion of the statute based on the assumption of manufacturer bad faith. Second, even assuming Grismore's premise that manufacturers seek ways to violate the law, she offers nothing but her raw speculation that the possibility of a buyer giving up is enough to motivate a manufacturer to gamble with lawsuits and civil penalties available under the Act if the buyer does not give up and seeks a legal recourse. Finally, even if

33

manufacturers fail to buy back lemons, that will not flood the street with defective vehicles as Grismore claims. Dealers must still obtain and make available vehicle history reports, which include prior repair information. Cal. Veh. Code § 11713.26. Additionally, they must repair any egregious issues before resale, *id.*, Cal. Veh. Code §§ 24007(a)(1), 24011, *or* conspicuously disclose that the car is being sold "as-is," *see* §§ 1792.3, 1792.5; 16 C.F.R. § 455.2(b)(1).

### d. The Legislature has logical and justified reasons to exclude used-cars purchases from the Act outside § 1795.5.

Grismore argues that "[t]here's no logic" in allowing manufacturers to increase the value of their vehicles with transferrable warranties unless buyers of used vehicles can pursue the Act's remedies against them. OB at 37–40. Similarly, she argues that "*Rodriguez*'s interpretation creates arbitrary, unsupported distinctions between vehicle buyers." OB at 44–46.

She is wrong on both points. First, by saying it is illogical to read "new motor vehicle" literally, and thereby exclude purchasers of used vehicles, Grismore is implicitly accusing the Legislature, itself, of being illogical between 1970 and 1987—before it amended the definition of "new motor vehicle" to include "other vehicles sold with a manufacturer's new car warranty."

But in any event, it was neither illogical nor arbitrary for the Legislature to extend the Act's supplemental remedies only to purchasers of new vehicles. The Legislature could have reasonably decided the distinction was justified by the

difficulty of proving that a defect in a used car arose from condition in the manufacturer's control. *See Pryor v. Lee C. Moore Corp.*, 262 F.2d 673, 675 (10th Cir. 1958) ("All of the cases agree . . . that proximity of time and events is cogently relevant in the determination of the ultimate factual issue whether the negligent manufacture caused the harm.")

Moreover, it makes sense to shift obligations from manufacturers to *used car dealers*, as § 1795.5 does under a proper reading of the Act. Licensed used car dealers must inspect, repair, and disclose information about used vehicles to buyers, which in turn allows buyers to make informed decisions. *See, e.g.*, Cal. Veh. Code §§ 11713.26; 24007(a)(1); 24011; 24250 et seq. If the dealer breaches these duties, the *dealer* is then liable. And if the used car dealer separately warrants a vehicle, then the dealer is subject to the further obligation to repurchase the vehicle under the Act. *See* § 1795.5. A manufacturer who was not involved in or profiting from that sale is "generally off the hook." *See Kiluk v. Mercedes-Benz USA, LLC*, 43 Cal. App. 5th 334, 339 (2019).

The Legislature's line drawing also conforms to consumer expectations. "Used vehicles are reasonably expected to require maintenance and repair." (Billings, Warranty, *supra*, § 9:10.) The reasonable assumption is that consumers carefully consider the purchase of a used vehicle, review the dealer's disclosures about the vehicle's history, and understand used vehicles may require repair. All these

differences constitute a logical, non-arbitrary basis for treating purchases of new and used vehicles differently under the Act.

### C. Most—and better reasoned—cases agree.

In addition to the Act's plain meaning and legislative history, the case law overall supports the literal interpretation of "new motor vehicle" as excluding used vehicles sold without a full manufacturer warranty. Although Grismore frames the matter as a duel between two co-equal conflicting cases—*Jensen* and *Rodriguez*—that is not accurate. Intermediate state appellate courts and federal district courts in California analyzing the meaning of "new motor vehicle" since *Rodriguez* nearly universally agree: **(1)** *Rodriguez* is correct; **(2)** *Jensen* is easily distinguishable; and **(3)** *Jensen*'s reasoning is questionable.

### 1. *Rodriguez* is correct.

In *Rodriguez*, the California Court of Appeal held as a matter of first impression for a California court that a used car sold or leased with an unexpired manufacturer warranty is not a "new motor vehicle" for purposes of the Act. 77 Cal. App. 5th at 222–23. Although no state court had decided the issue, the United States District Court for the Northern District of California had, and it reached the same conclusion as the *Rodriguez* court. *Johnson v. Nissan N. Am., Inc.*, 272 F. Supp. 3d 1168, 1179 (N.D. Cal. 2017) (holding used car still under manufacturer's warranty was not a "new motor vehicle," and therefore, as a "used good" for purposes of § 1795.5 would be entitled to relief under the Act only if dealer issued purchaser a new

36

express warranty).

Since *Rodriguez* was decided, "[federal] district courts have consistently held that used non-demonstrator vehicles with amounts remaining on their warranty are not new motor vehicles under the SBA [the Act]." *Adams v. BMW N. Am., LLC*, No. 22-CV-01749-BAS-KSC, 2024 WL 1898459, at \*5 (S.D. Cal. Apr. 30, 2024).[5] None of these courts felt bound by *Jensen* as Grismore argues the Court should feel here. Rather, the district courts recognized that *Jensen* is "easily distinguishable" and otherwise expressed "reservations" about its reasoning. *See Fish v. Tesla, Inc.*, No. SACV21060PSGJDEX, 2022 WL 1552137, at \*11 (C.D. Cal. May 12, 2022).

---

[5](1) *Kuyawa v. Mercedes-Benz USA, LLC*, No. 23-CV-05712-WHO, 2024 WL 950164, at \*5 (N.D. Cal. Mar. 5, 2024); (2) *Velador v. Mercedes-Benz USA, LLC*, No. 223CV07439CASSSCX, 2024 WL 312676, at \*4 (C.D. Cal. Jan. 22, 2024); (3) *Ruvalcaba v. Hyundai Motor Am.*, No. 822CV01244JWHJDE, 2024 WL 943946, at \*4 (C.D. Cal. Jan. 4, 2024); (4) *Arzeta v. McLaren Auto., Inc.*, No. 221CV02787FLAPDX, 2023 WL 8351538, at \*3 (C.D. Cal. Oct. 12, 2023); (5) *Palonen v. Mercedes-Benz USA, LLC*, No. CV 23-23-DMG (RAOX), 2023 WL 8254503, at \*3 (C.D. Cal. Sept. 28, 2023); (6) *Molina v. Ford Motor Co.*, No. 2:23-CV-06323-RGK-KS, 2023 WL 7314127, at \*3 (C.D. Cal. Sept. 19, 2023); (7) *Lemke-Vega v. Mercedes-Benz USA, LLC*, No. 23-CV-01408-DMR, 2023 WL 5957175, at \*3 (N.D. Cal. Sept. 12, 2023); (8) *Alves v. Mercedes-Benz USA, LLC*, No. CV233049MWFRAOX, 2023 WL 5207492, at \*6 (C.D. Cal. July 10, 2023); (9) *Nilsen v. Tesla, Inc.*, No. 22-CV-07472-BLF, 2023 WL 3763811, at \*3 (N.D. Cal. May 31, 2023); (10) *Coelho v. Hyundai Motor Am.*, No. 22-CV-07670-BLF, 2023 WL 3763812, at \*3 (N.D. Cal. May 31, 2023); (11) *Hernandez v. Mercedes-Benz USA, LLC*, No. 322CV00824BENRBB, 2023 WL 2593935, at \*3 (S.D. Cal. Mar. 20, 2023); (12) *Edwards v. Mercedes-Benz USA, LLC*, No. CV 21-2671-RSWL-JCX, 2022 WL 5176869, at \*3 (C.D. Cal. Oct. 5, 2022); (13) *Pineda v. Nissan N. Am., Inc.*, No. CV 22-239-DMG (JCX), 2022 WL 2920416, at \*3 (C.D. Cal. July 25, 2022); (14) *Fish v. Tesla, Inc.*, No. SACV21060PSGJDEX, 2022 WL 1552137, at \*11 (C.D. Cal. May 12, 2022).

## 2. *Jensen* is easily distinguishable, and its reasoning is questionable.

The issue in *Jensen* was whether a former demonstrator leased to the plaintiff *with a full manufacturer warranty* constituted a "new motor vehicle." The material facts of that issue are not the facts here, *Rodriguez,* or any of the district court cases applying *Rodriguez*—where none of the cars were sold with a full manufacturer warranty. Thus, the fact that the *Jensen* court held that the vehicle at issue was a "new motor vehicle" has no bearing on the Subject Vehicle here. Indeed, the same result would have been reached under the interpretation outlined in *Rodriguez* and this brief.

It is *Jensen*'s problematic dicta, unessential to the court's holding—that a vehicle need only have a balance left on the manufacturer's original warranty to qualify as a "new motor vehicle"—that Grismore relies on. "But it is axiomatic that an unnecessarily broad holding is informed and limited by the facts of the case in which it is articulated." *Ixchel Pharma, LLC v. Biogen, Inc.*, 9 Cal. 5th 1130, 1153 (2020) (internal quotation marks and brackets omitted). So nothing in the *Jensen* dicta is binding.

Not only is the dicta not binding, the reasoning behind it is too suspect to even be persuasive authority. To begin, the court failed to give genuine priority to the plain meaning of the statute's text. The *Jensen* court ignores the first sentence of § 1793.22(e)(2), defining what "'[n]ew motor vehicle means," and its entire textual

38

analysis is a single sentence related to the provision's third sentence: "The use of the word 'or' in the statute indicates 'demonstrator' and 'other motor vehicle' are intended as alternative or separate categories of 'new motor vehicle' if they are 'sold with a manufacturer's new car warranty.'" *Jensen v. BMW of N. Am., Inc.*, 35 Cal. App. 4th 112, 123 (1995). But that is an undisputed point. In no way does it lead to what the court purports to infer from the text: "We conclude the words of section 1793.22 are reasonably free from ambiguity and cars sold with a balance remaining on the manufacturer's new motor vehicle warranty are included within its definition of "new motor vehicle."" *Id*.

Then, on the conclusory pretext that "the peculiar grammatical structure of [§ 1793.22] makes BMW's argument at least superficially plausible," the court dedicates 13 paragraphs to extrinsic sources. *Id.* at 123–27. First, the court observed that the 1987 amendment "clarified the scope" of the law and "clarified the manufacturer's responsibility on resale." *Id.* at 123–24. Next, the court cited the 1988 amendment that added "chassis, chassis cab, . . . [and] that portion of a motorhome devoted to its propulsion, . . ." to the list of what "new motor vehicle" included. *Id.* at 124. Last, the court observed that the 1991 amendment "closed another loophole" so the law would cover cars returned under other states' "Lemon Laws." *Id.* The court ties up its discussion of the three amendments with what can only be described as an overstatement: "These amendments show the Legislature has systematically

39

attempted to address warranty problems unique to motor vehicles, including transferability and mobility." *Id.*

The court then misconstrues a regulation of the Department of Consumer Affairs to claim that the Department supports the court's interpretation:

> Our conclusion section 1793.22 includes cars sold with a balance remaining on the new motor vehicle warranty is consistent with . . . the Department of Consumer Affairs' regulations which interpret the Act to protect 'any individual to whom the vehicle is transferred during the duration of a written warranty.' (Cal. Code Regs., tit. 16, § 3396.1, subd. (g).).

*Id.* at 126. But the court misunderstands the Department's regulation. The court is quoting from the regulation's definition of "consumer"—a term the Act does not use. *See* Cal. Code Regs. tit. 16, § 3396.1(g). Contrary to what the court states, "the Act," itself, does not "protect" the regulation's definition of "consumer." This particular regulation relates to the Arbitration Certification Program applicable not only to the Act but also portions of the commercial Code, Health and Safety Code, and Business and Professions Code. *See* Cal. Code Regs. tit. 16, § 3396.1(a). The definition of "consumer" must include used car owners, then, because they can raise Commercial Code breach of warranty claims against manufacturers. Moreover, these arbitration programs must comply with *federal* standards, which require the programs to cover all "consumers," including owners of used products with transferred warranties

40

(without granting a repurchase remedy to those used product consumers). *See* Cal. Civ. Code § 1793.22(d)(1); 16 C.F.R. § 703.1(b)(g); 16 C.F.R. § 703.2.

Contrary to *Jensen*, the Department supports *Rodriguez*'s interpretation that the Act's provisions outside of § 1795.5 apply only to new vehicles subject to full manufacturer warranties. As noted above, the Department helped draft the 1987 amendment, which it described as a "clean-up measure to the lemon law," 3 MJN 699, that "applies *only* to new cars, vans or trucks." 12 MJN 855; see also 12 MJN 863.

Given *Jensen*'s manifold weaknesses, it is also not surprising that the Supreme Court of California denied the request for an order directing depublication of *Rodriguez* pending its review before the California Supreme Court. *See Rodriguez v. FCA US*, 512 P.3d 654 (Cal. 2022).

Only one decision has come to *Jensen*'s defense over *Rodriguez*. In *Stiles v. Kia Motors Am., Inc.*, 101 Cal. App. 5th 913 (2024), the Court of Appeal held that a previously owned car bought with an unexpired manufacturer's warranty constituted a "new motor vehicle" for purposes of the Act. The court disagreed with *Rodriguez* at length. But all of its objections are misplaced.

First, *Stiles* accuses *Rodriguez* of "add[ing] words to the statute" for inferring that "new motor vehicle" is limited to cars that (1) have never been previously own, and (2) come with full express warranties. *Id.* That is an unfair characterization. The

41

first inference, that "new motor vehicles" are limited to new vehicles, merely gives the phrase its ordinary meaning—an ordinary meaning supported by the statutory definition's implied allusion to the accepted meaning of the term under the Vehicle Code, *see* discussion *supra* Section I.A.1, which inference is vindicated by the bill's author expressly stating her intent that the term be consistent with the Vehicle Code's definitions, *see* discussion *supra* Section I.B.3. Likewise, the second inference, that "new motor vehicles" necessarily come with full manufacturer warranties, does not "add[] words" but merely gives meaning to the statutory text "sold with a manufacturer's new vehicle warranty." *See* discussion *supra* Section I.A.I.

Second, the *Stiles* court attacks a strawman version of *Rodriguez*. According to *Stiles*, *Rodriguez* "assert[s] that section 1793.22, subdivision (e)(2) has only two categories— dealer-owned and demonstrator," which *Stiles* say, "defies the rules of English grammar and logic." *Id.* But *Stiles* misrepresents *Rodriguez*. Indeed, this passage of *Rodriguez* is in service of making a point that *Jensen* and all the parties agree with: that "new motor vehicle" includes more than what may technically be called a "demonstrator" or "dealer-owned vehicle"—it includes "other vehicles" that like a "demonstrator" or "dealer-owned vehicle" are "sold with a manufacturer's new car warranty." *Compare* Rodriguez at 220–21 ("As we read the phrase, its clear purpose is to function as a catchall to ensure that manufacturers cannot evade liability under the Act by claiming a vehicle doesn't qualify as new because the dealership

42

hadn't actually used it as a demonstrator") *with Jensen* at 123 ("[T]he statute indicates 'demonstrator' and 'other motor vehicle' are intended as alternative or separate categories of 'new motor vehicle' if they are 'sold with a manufacturer's new car warranty.'").

The two decisions disagree over the precise meaning of a vehicle "sold with a manufacturer's new car warranty" and how that meaning limits the overall scope of what "other vehicles" might constitute a "new motor vehicle," but this disagreement arises not from anything like a disjunctive "or" but from an application of the *ejusdem generis* doctrine. The disagreement is not about the use of the doctrine itself, it is about the parties' differing views on whether a vehicle like a demonstrator or dealer-owned vehicle "sold with a manufacturer's new car warranty" will necessarily always be a vehicle *sold with the entirety of the manufacturer's warranty remaining*, given other interplaying California laws. *See* discussion *supra* Section I.A.I.

Third, *Stiles* accuses *Rodriguez* of ignoring the plain words of the statute. *See Stiles v. Kia Motors Am., Inc.*, 101 Cal. App. 5th 913 (2024) ("We, like *Jensen*, but unlike *Rodriguez*, look to the plain words of the statute.") This criticism is absurd. It is *Jensen*'s textual analysis that consists of a single sentence analyzing only § 1793.22(e)(2)'s third sentence while disregarding what § 1793.22(e)(2)'s first sentence establishing what "new motor vehicle" "means."

Fourth, *Stiles* attacks *Rodriguez* with a legislative history argument that *Jensen*

43

did not make: "If any legislative history is required, its most salient feature is that more than 30 years after section § 1793.22 was enacted and almost 30 years after *Jensen* was decided, the Legislature has not amended the definition of "new motor vehicle" in section 1793.22." *Stiles v. Kia Motors Am., Inc.*, 101 Cal. App. 5th 913 (2024). But the Legislature had no cause to amend the statute. It was almost 30 years after *Jensen*—until *Rodriguez*—that the facts relevant to *Jensen's* dictum ever came before a California appellate court.

## II. The Court should uphold the trial court's dismissal of Grismore's implied warranty claim.

After MBUSA moved for summary judgment on both Grismore's express warranty and implied warranty claims, Grismore focused most—if not all—of her opposition to a defense of her express warranty claim. Only two sentences in her brief to the district court can be reasonably construed as a defense of her implied warranty claim: "(1) "[T]he Act, by its plain terms, creates an implied warranty for 'used' vehicles ***where they are purchased with an express warranty***. Civ. Code § 1795.5," ER-434 (emphasis in original); and (2) "Plaintiff is entitled to relief for both her express and implied warranty claims, as held by *Jensen*," ER-435.

To the extent she intended these two sentence to be a defense of her implied warranty claim under § 1795.5, she abandoned these meritless defenses, and on appeal argues, instead, that summary judgment on her implied warranty claim was error because even if the Subject Vehicle were not a "new motor vehicle," she was

protected by implied warranties that "the Act separately provide[s]" under §§ 1791.1, 1792, 1792.1. *See* Opening Brief at 55. [6]

Her appeal should be denied because **(a)** she waived her new argument, and in any case, **(b)** her used car is not a new consumer good to which the implied warranties apply.

## A. Grismore waived her argument on appeal.

"It is well established that an appellate court will not reverse a district court on the basis of a theory that was not raised below." *Alaska Airlines, Inc. v. United Airlines, Inc.*, 948 F.2d 536, 546 n. 15 (9th Cir. 1991); *see, e.g., Kleiser v. Chavez,* 55 F.4th 782, 784 (9th Cir. 2022) (holding plaintiff–appellant waived his argument "by failing to raise it before the district court" where "[t]he record reveals that [he] made the strategic decision to focus exclusively on [an alternative] doctrine and did not brief [the argument on appeal]"); *Loomis v. Cornish*, 836 F.3d 991, 997 (9th Cir. 2016) (holding plaintiff–appellant waived certain arguments on appeal because he "did not raise these arguments before the district court in his opposition to summary judgment").

---

[6] Her trial court defenses, to the extent they were such, were meritless because (1) § 1795.5 applies against manufacturers only where they act in the role of a retailer by making a separate express warranty to the purchaser of a used vehicle, *see Nunez v. FCA US LLC*, 61 Cal. App. 5th 385, 399 (2021), and there is no evidence MBUSA made a separate warranty here; and (2) *Jensen* did not hold anything related to relief for an implied warranty claim (the principle issue was whether Jensen's vehicle was a "new motor vehicle" for purposes of an award of expert witness fees under § 1794(d)), *see Jensen v. BMW of N. Am., Inc.*, 35 Cal. App. 4th 112, 119 (1995).

Because Grismore's arguments on appeal related to her implied warranty claim are not the argument she made before the district court in her opposition to summary judgment, she has waived her arguments on appeal. The trial court's judgment should be affirmed on this basis alone.

### B. In any case, Grismore's used car is not a new consumer good to which implied warranties apply.

"Every sale of goods that are governed by the provisions of [the Act], on an 'as is' or 'with all faults' basis, made in compliance with the provisions of this chapter, shall constitute a waiver by the buyer of the implied warranty of merchantability and, where applicable, of the implied warranty of fitness." Cal. Civ. Code § 1792.5. Thus, because the Subject Vehicle was sold "as is," the trial court properly granted summary judgment dismissing Grismore's implied warranty claims under the Act.

Moreover, the implied warranties under §§ 1791.1, 1792, 1792.1, on which Grismore's novel argument on appeal rely, attach only to "consumer goods." *See* §§ 1791.1(a); 1791.1(b); 1792; 1792.1.[7] But "consumer goods" consist of only *new*

---

[7] *See* § 1791.1(a) ("'Implied warranty of merchantability' . . . means that the *consumer goods* meet each of the following . . . ." (emphasis added)); § 1791.1(b) ("'Implied warranty of fitness' means (1) that when the retailer, distributor, or manufacturer has reason to know any particular purpose for which the *consumer goods* are required . . . and (2) that when there is a sale of an assistive device . . . ." (emphasis added)); § 1792 ("Unless disclaimed in the manner prescribed by this chapter, every sale *of consumer goods* that are sold at retail in this state shall be accompanied by the manufacturer's and the retail seller's implied warranty that the goods are merchantable. The retail seller shall have a right of indemnity against the manufacturer in the amount of any liability under this section." (Emphasis added)); § 1792.1 ("Every sale of *consumer goods* that are sold at retail in this state by a

46

product and used assistive devices. § 1791(a). And a product is "new" for purposes of

§ 1791(a) if it the product is new in the ordinary sense of the words: i.e., it has had no

previous owner. *See, e.g., Cooper v. Simpson Strong-Tie Co. 460* F. Supp. 3d 894,

914 (N.D. Cal. 2020) (holding fasteners built into house, which was built in 2004 and

plaintiffs purchased in 2013, were not "new" products, and therefore not "consumer

goods" for purposes of § 1791(a)). Because Grismore therefore does not dispute that

the Subject Vehicle was not "new" in the ordinary sense of the term, her argument

fails on this basis too.

Finally, to the extent Grismore is arguing that the trial court committed

reversible error related to her implied warranty claim because "the only ground on

which the trial court granted summary judgment is that the Plaintiff's car was not a

'new motor vehicle' [for purposes of § 1793.22]," *see* OB at 54, such an argument

would fare no better. Even if that were a fair characterization of the trial court's

ruling (it is not), it would not matter because this Court "review[s] the district court's

grant of summary judgment de novo and . . . can 'affirm on any ground supported by

the record,' including a ground upon which the district court did not rely." *Brown v.*

*Arizona*, 82 F.4th 863, 874 (9th Cir. 2023) (quoting *Olson v. Morris*, 188 F.3d 1083,

1085 (9th Cir. 1999)).

---

manufacturer who has reason to know at the time of the retail sale that the goods are
required for a particular purpose and that the buyer is relying on the manufacturer's
skill or judgment to select or furnish suitable goods shall be accompanied by such
manufacturer's implied warranty of fitness." (Emphasis added)).

---

## CONCLUSION

---

Grismore leased the Subject Vehicle used, "as is," and without a full manufacturer's new vehicle warranty. The Act does not impose any obligations on the vehicle's manufacturer under these circumstances. Therefore, MBUSA respectfully requests that the Court affirm the district court's judgment dismissing Grismore's claims.

Dated: June 17, 2024

                          Respectfully submitted,

By:   */s/ Amanda E. Heitz*
       Amanda E. Heitz
       Alexander J. Egbert
       BOWMAN AND BROOKE LLP
       2929 N. Central Ave.
       Suite 1900
       Phoenix, AZ 85012
       Telephone: 1.602.643.2311

       Attorneys for Respondents Mercedes-Benz USA, LLC

---

### CERTIFICATE OF COMPLIANCE
---

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

**9th Cir. Case Number(s)** 24- No. 24-672

I am the attorney or self-represented party.

**This brief contains 11,862 words,** including **0** words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[x] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
    [ ] it is a joint brief submitted by separately represented parties.
    [ ] a party or parties are filing a single brief in response to multiple briefs.
    [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** /s/Amanda E. Heitz    **Date** June 17, 2024

---

### CERTIFICATE OF SERVICE

---

I HEREBY CERTIFY that on June 17, 2024, I electronically filed the foregoing document with the Clerk of the Court for the United States Court of Appeals using the appellate CM/ECF system, which will send notification of such filing to counsel or parties of record.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system. I certify that the foregoing was served by email and mail on the following counsel:

Kevin Y. Jacobson (California SBN 320532)
Luis A. Serrano (California SBN 349024)
QUILL & ARROW, LLP
10900 Wilshire Boulevard, Suite 300
Los Angeles, CA 90024
Telephone: (310) 933-4271
Email:        kjacobson@quillarrowlaw.com
lserrano@quillarrowlaw.com
e-service@quillarrowlaw.com

Attorneys for Plaintiff – Appellant
RENEE LYNN GRISMORE, an individual

Dated: June 17, 2024,

Respectfully submitted,

By:   /s/ Amanda E. Heitz
            Amanda E. Heitz